UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTICOR, INC.,

       Plaintiff,

v.

NUTRISYSTEM, INC., and
NUTRI/SYSTEM IPHC, INC.,

       Defendants.
_____/

File No. 1:12-CV-256

HON. ROBERT HOLMES BELL

# **O P I N I O N**

This action for declaratory judgment is before the Court on Defendants Nutrisystem, Inc. and Nutri/System IPHC, Inc.'s motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 14.) For the reasons that follow, Defendants' motion will be denied.

## I.

Plaintiff Alticor, Inc. filed this action against Defendants Nutrisystem, Inc. and Nutri/System IPHC, Inc. (collectively, "Nutrisystem") seeking a declaration that Alticor's use and registration of the NUTRILITE mark in connection with goods and services related to health and nutrition, does not violate Defendants' alleged rights in the NUTRISYSTEM mark, and in particular does not constitute trademark infringement, trademark dilution, or unfair competition with respect to any rights of Defendants. (Dkt. No. 1, Compl. ¶ 3.)

Defendants have moved to dismiss this action for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendants contend that there is no actual case or controversy sufficient to give this Court subject matter jurisdiction. Defendants contend that Plaintiff filed this action in an attempt to obtain an advisory opinion as to a hypothetical situation that does not actually exist.

Where a 12(b)(1) motion attacks the factual basis for jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). To satisfy the case-or-controversy requirement of the Declaratory Judgment Act and Article III of the United States Constitution,[1] the dispute at issue must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and it must be a "real and substantial" controversy admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The question for the Court is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Although *MedImmune*

---

[1] The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

eliminated the "reasonable apprehension of suit" test for determining subject matter jurisdiction in declaratory judgment actions, 549 U.S. at 132 n.11, apprehension of suit is still a valid consideration. "[F]ollowing *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).

There is no dispute that this action was prompted by a March 6, 2012, letter from Defendants' attorneys to Plaintiff. The letter claims, among other things, that Alticor's "use and registration" of the NUTRILITE mark in connection with goods and services related to weight loss "infringes" Nutrisystem's rights in its NUTRISYSTEM mark "in violation of the Trademark Act of 1946 (the 'Lanham Act'), 15 U.S.C. §§ 1051, et seq., as well as various other federal and state laws governing trademarks, unfair competition, and deceptive trade practices." (Dkt. No. 1, Compl. ¶¶ 24-26, Ex. O.)[2] The March 6 letter further "demands"

---

[2]The March 6, 2012, letter states in relevant part:

Recently, Nutrisystem learned that you have filed the following trademark applications containing the term NUTRILITE for various goods and services related to weight loss . . . Our client believes that your use of a very similar mark for very similar goods and services will result in confusion amongst consumers with respect to the source of such goods. Accordingly, the use and registration of your NUTRILITE mark infringes Nutrisystem's rights in the Mark in violation of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051, et seq., as well as various other federal and state laws governing trademarks, unfair competition and deceptive trade practices.

(continued...)

that Alticor withdraw its applications for NUTRILITE and "refrain from beginning or continuing all use of the mark" by March 15, 2012, or Nutrisystem will "assume" that Alticor does not wish to "settle this matter amicably." (*Id.*) Alticor contends that in light of the March 6 letter, Alticor has a reasonable apprehension of being sued by Defendants for trademark infringement, trademark dilution, and related claims. (Compl. ¶ 31.)

Defendants contend that the March 6 letter does not assert that Plaintiff is infringing Nutrisytem's marks, nor does it threaten litigation for trademark infringement. Furthermore, Defendants contend that they could not make such a claim because actual use is required for a trademark infringement action, and the March 6 letter was only directed at the registration of marks that had not yet been used. *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d

---

²(...continued)
Your use and registration of NUTRILITE for similar goods and services distributed though a cooperative independent business owners' network, are likely to cause or have caused dilution of the famous and distinctive qualities of the Mark. Your actions are likely to tarnish or have tarnished our client's reputation by association with a wide range of consumer products not emanating from a weight loss company.

In light of the above, Nutrisystem demands that you withdraw your applications for NUTRILITE and refrain from beginning or continuing all use of the mark. We hope that having been apprised of the foregoing, you will agree to our client's request and resolve this matter amicably.

If we do not hear from you or your counsel by March 15, 2012, we will assume that you do not wish to settle this matter amicably. Please note that the current offer to resolve this matter amicably is for settlement purposes only and without prejudice to any of Nutrisystem's rights.

(Compl. Ex. O.)

619, 625 (6th Cir. 1996) (holding that use of the protected mark is a prerequisite to a trademark infringement action).

Defendants' contentions are belied by the plain language of the letter. The letter is directed not only to Alticor's registration of the mark, but also to its continued use of the mark. The letter expresses not only concern that Alticor's use of the mark will cause future dilution of Nutrisystem's mark, or tarnishing of Nutrisystem's reputation, but also concern that Alticor had already caused dilution or tarnishing. Alticor has presented evidence that the NUTRILITE mark has been used on weight management products since the 1960s (Compl. Exs. J-N), and that its new registrations were for new marks consisting of NUTRILITE plus additional words and phrases (Compl. Ex. G). Thus, Alticor could reasonably interpret the March 6 letter as a threat to bring a trademark infringement action. Although Nutrisystem contends that it was unaware of Alticor's use of the NUTRILITE mark prior to or at the time of the March 6 letter, the apprehension of suit is judged from the perspective of the party being threatened. "In the trademark context, in determining 'if the threat perceived by the plaintiff is real and reasonable,' the court focuses 'upon the position and perceptions of the plaintiff' and '[t]he acts of the defendant [are] . . . examined in view of their likely impact on competition and the risks imposed upon the plaintiff.'" *Young v. Vannerson*, 612 F. Supp. 2d 829, 840 (S.D. Tex. 2009) (quoting *Chesebrough-Pond's v. Faberge*, 666 F.2d 393, 396 (9th Cir. 1982)). There is nothing in the record to suggest that Alticor should have known that Nutrisystem was unaware of Alticor's historic use of the NUTRILITE mark.

It is generally undisputed that a charge of infringement, and even conduct or action short of an actual charge of infringement, is sufficient to establish the existence of a case or a controversy. *Goodrich-Gulf Chems., Inc. v. Phillips Petroleum Co.*, 376 F.2d 1015, 1018 (6th Cir. 1967).  Indeed, an accusation of trademark infringement has been characterized as "the hallmark of an actual controversy." *See Green Edge Enter., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1302 (Fed. Cir. 2010) ("Green Edge and International Mulch have both accused Rubber Mulch of infringing a valid trademark, which is the hallmark of an actual controversy.").

Moreover, there is nothing in the record to suggest that Nutrisystem has retracted or abandoned the claims made in the March 6 letter.  Defendants have not conceded either the invalidity of their mark or the lack of infringement by Plaintiff.  *See Green Edge Enter.*, 620 F.3d at 1302 ("Because neither Green Edge nor International Mulch has conceded either invalidity or lack of infringement of its trademark, a case or controversy exists.").

The Court is satisfied that, under all the circumstances, there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  *See MedImmune*, 549 U.S. at 127. Accordingly, the Court will deny Defendants' motion to dismiss.

An order consistent with this opinion will be entered.

Dated: October 9, 2012                     /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE